### GRIFFIN *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

FISH, J.    When in the trial of an action by an employee of a railway company against it, for personal injuries, the plaintiff introduces testimony warranting a finding that the defendant was negligent, and it is, under all of the evidence, an open question whether or not the plaintiff was guilty of negligence contributing to the injuries, the case should be submitted to a jury, and not disposed of by granting a nonsuit.

The granting of a nonsuit in the present case was erroneous.

*Judgment reversed.    All the Justices concurring.*

Argued June 6, — Decided July 23, 1901.

Action for damages.    Before Judge Estes.    Newton superior court.    September, 1900.

The plaintiff was a locomotive engineer, and was ordered to take a construction-train to Covington, where defendant was building a spur-track.    He and his fireman were left there, with the train, in charge of and subject to the orders of Yancey, who was in control of the force of workmen and material for the spur-track.    No one but plaintiff and the fireman of his engine was furnished to aid in the movements of the engine and cars.    Plaintiff told Yancey they had better go to the office and get instructions to work by.    Yancey went to the office while plaintiff was working about the en-

gine, but returned and told plaintiff they needed no instructions, that Yancey had full charge of the train, and that they would go right over and do the work. There were three or four cars of rails, and five cars of cross-ties. During the morning they moved three cars of ties which were unloaded and distributed. In the afternoon Yancey directed plaintiff to take back the three empty cars and get two loaded cars, informing him that he (Yancey) could not leave the work to go back with him, and that he would furnish him two negro hands, but that they could not be risked to couple cars. Plaintiff took them and went back. He directed one of the negroes to set the switch, which he did, and then told him to uncouple certain cars. The negro fumbled about this, and plaintiff left the engine to do the uncoupling, telling the fireman to take the engine and go to the spur on the other side, where they would cut out the tie cars over there. Plaintiff had the negro to set another switch, and the fireman backed in. About that time the station agent came to plaintiff, and they had a talk about the cars he had left there — what was in them, and so on. He told the agent that they were "empties," and that he had come over to get those two that were in there. The agent seemed to be in a big hurry, and, in answer to a question, informed plaintiff that a train was due at 6.50 o'clock. This was the schedule time. Plaintiff remarked that he had fifteen minutes "to get those cars out of here and get away," to which the agent answered yes, and went back to the depot. The expected train was coming from the east, and plaintiff was three, four, or five hundred yards west of the depot. When he put the cars out he asked the agent if they would roll by if he cut them out there, and the agent answered that they would. Plaintiff cut them out there and came back on the side-track, and went to try to push them off with his pushing-bar. He wanted to get those cars ahead, on account of distributing the ties. He always wanted them in front; it was convenient. He gave them a little push with the engine, without the pinch-bar, and just started them off. They were heavily loaded, and the negro stopped them about two car-lengths on a trestle. Three cars were then coupled to the front of the engine, which were to be coupled to the two that had been shoved upon the trestle. Plaintiff walked right down across the trestle, right to the car, and waved the fireman ahead, to make the coupling. He coupled it, and just then he heard the whistle of the

train approaching the depot.    He jumped upon a flat car, and saw the other train out through a cut above the depot, running very rapidly.    When the engineer of this train saw the work-train ahead, he blew the whistle for brakes and jumped from his engine.    The work-train had begun to move away, but while it was yet upon the trestle it was struck by the other train, and both trains and the trestle were wrecked.    The plaintiff testified that when the collision came the other train was running at least twenty-five miles an hour; that they passed the depot, the terminus, and were four, five, or six hundred yards beyond the depot when they struck; that he looked at his watch just before the collision, and noted that the train was five or six minutes ahead of its scheduled time for arrival at the station ; that he had compared his watch with the standard clock on the previous night, as he was required to do, and they were agreed; and that when the collision came the car on which he was standing, being the second one from his engine, was knocked up and slewed around like it was going to tumble right down, and, thinking he would be killed if he went down with it, loaded as it was with iron rails, he jumped from it in the opposite direction, striking the ground with his feet, a distance of about forty feet from the top of the car.

*E. F. Edwards* and *Guerry & Hall*, for plaintiff.
*Lawton & Cunningham*, for defendant.